UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

| | |
|---|---|
| In re:<br><br>LESLIE B. LEWIS,<br><br>        Debtor. | Chapter 7<br>Case No. 14–30096–HJB |
| ALAN L. BRAUNSTEIN, CHAPTER 7 TRUSTEE OF THE ESTATE OF LESLIE B. LEWIS,<br>        Plaintiff,<br><br>      v.<br><br>NANNETTE S. LEWIS, and LISA LONDON, as TRUSTEE OF CONE HILL ROAD NOMINEE TRUST,<br><br>        Defendants. | Adv. Proceeding No.: 15–03003<br><br><br>LEAVE TO FILE GRANTED<br>ON APRIL 14, 2015 |

## SECOND AMENDED COMPLAINT

Five years ago, Debtor Leslie B. Lewis (the "Debtor") and his ex-wife

Defendant Nannette Lewis ("Nannette Lewis") were a married couple with net

worth in excess of $5.2 million.  Today, Nannette Lewis still resides in Chestnut

Hill, and is still a millionaire;  the Debtor lives in a rental unit in Western

Massachusetts and is bankrupt.  The Debtor's insolvency is the direct result of

the Defendants' scheme to use a divorce to shield fraudulent transfers of all the

Debtor's assets to Nannette Lewis, in a concerted effort to avoid creditors' claims.

Notably, there were at least three creditor lawsuits filed and pending against the Debtor and/or Nanette Lewis while the Defendants sought a divorce order.

The Defendants' fraudulent transfers stripped the Debtor of virtually all meaningful assets, including real property with equity worth more than $2.5 million and investment accounts worth more than $1 million, and saddled him with significant debt. In order to make the division of assets appear superficially fair, Defendant Nannette Lewis promised to make various "Symbolic" payments to the Debtor. Other than a trivial amount, however, Nannette Lewis never even made those payments.

By this proceeding, Alan L. Braunstein, the duly-appointed Chapter 7 Trustee (the "Trustee") of the estate of Leslie B. Lewis (the "Estate"), pursuant to 11 U.S.C. §§ 548 & 550 and Mass. Gen. Laws Ch. 109A, seeks to avoid and to recover the interest of the Debtor, in certain property, to avoid certain fraudulent transfers of property made to Nannette Lewis and/or Defendant Lisa London (a trustee holding assets for Nannette Lewis's behalf), and to recover the fraudulently transferred property for the benefit of the Estate. To the extent the fraudulently transferred property cannot be recovered, the Trustee seeks judgment against Nanette Lewis and Defendant Lisa London for the value of the Debtor's rightful interest in all the marital property. In the alternative, the Trustee seeks an order requiring that Nannette Lewis fully perform her promise to pay the Debtor, and also for the Estate's attorneys' fees and costs for bringing this action.

## PARTIES

1.      The Plaintiff, Alan L. Braunstein (the "Trustee"), is the Chapter 7

Trustee in Bankruptcy for the Debtor, Leslie B. Lewis (the "Debtor"), with a place

of business situated at Three Center Plaza, Boston, Massachusetts 02108 (Suffolk

County).  The Plaintiff brings this action solely in his capacity as Trustee.

2.      The Defendant Nannette S. Lewis ("Nannette Lewis"), ex-wife of the

Debtor, is an individual who resides at 45 Laurel Road, Brookline,

Massachusetts 02467 (Norfolk County).

3.      The Defendant Lisa London ("Lisa London"), Trustee of The Cone Hill

Road Nominee Trust (the "Cone Hill Trust"), is an individual who, upon

information and belief, resides at 80 Burr Drive, Needham, Massachusetts 02492

(Norfolk County).

## JURISDICTION

4.      On February 4, 2014, the Debtor filed a Voluntary Petition for Relief

pursuant to Chapter 7 of the United States Bankruptcy Code.  Thereafter, interim

trustee, Jack E. Houghton, was appointed on February 5, 2014.  After an election,

Alan L. Braunstein was duly appointed Chapter 7 Trustee on June 25, 2014,

pursuant to section 702 of the Bankruptcy Code.

5.      This Court has subject matter jurisdiction over the Trustee's claims in

accordance with 28 U.S.C. §§ 151, 157(a), & 1334(b) and 11 U.S.C. §§ 541, 544, 548,

550, & 551.

3

6.     This matter is a core proceeding in accordance with

28 U.S.C. §§ 157(b)(1), 157(b)(2)(E), 157(b)(2)(H), & 157(b)(2)(O).

**FACTS COMMON TO ALL COUNTS**

7.     The Debtor is an individual who resides at 125 River Birch Lane in

Dalton, Massachusetts 01226 (Berkshire County).

8.     Prior to the events described below, the Debtor was a successful

businessman who had amassed considerable wealth throughout his professional

career.

9.     The Debtor was a founder Asahi/America Inc., and served as its

Chairman, President, and CEO until the publicly traded manufacturer of plastic

valves was acquired in 1999. At the time of the merger, the Debtor owned 27.2%

of Asahi/America's shares. According to securities filings, the Debtor received

$5 million in the form of a promissory note.  Upon information and belief, the

Debtor also received roughly $2.7 million for his shares in Asahi, as well as

another roughly $1.1 million as "per share proceeds" of the disposition of a

related entity Quail Piping Products, Inc.  The Debtor remained as Chairman and

CEO, earning a base salary of $300,000, until October 2003. Upon final separation

from the company, the Debtor also received $1 million in consideration for a

non-compete agreement.

10.     The Debtor testified at the § 341 Meeting of Creditors that the Debtor

and Nannette Lewis were married for over 22 years during which time they

maintained their finances jointly as spouses, stating that "[e]verything we had,

everything I had was joint." (Exhibit A, Leslie Lewis § 341 Transcript, Aug. 5,

2014 [hereinafter "Lewis § 341 Tr."], at 117).

11.    During their 22-year marriage, the Debtor and Nannette Lewis held

significant marital assets, including seven different multi-million dollar real

estate properties, stock worth millions of dollars, ownership interests in various

successful companies, investment accounts, vehicles, personal property,

furnishings, and other assets. (Exhibit A, Lewis § 341 Tr., at 6-7, 33-34).

12.    While married, the Debtor and Nannette Lewis were jointly indebted

for numerous liabilities, including mortgages, vehicle leases, promissory notes,

credit cards, and other accounts evidencing such joint indebtedness. (Exhibit A,

Lewis § 341 Tr., at 3-4, 44-45).

13.    The Debtor and Nannette Lewis filed joint tax returns for many years.

(Exhibit A, Lewis § 341 Tr., at 33, 115).

14.    The Debtor and Nannette Lewis's finances and assets were marital and

fully intermingled during their marriage.

### Debtor and Defendant Nannette Lewis Buy and Sell Millions of Dollars of Real Estate in Newton, Brookline, and the Berkshires

15.    On or about April 1, 1988, the Debtor and Nannette Lewis purchased a

single-family home located at 116 Chestnut Hill Street in Newton, MA for

$975,000.  They sold the house in 1995 for $1,286,000.

16.     On or about December 30, 1994, the Debtor and Nannette Lewis purchased a single-family home located at 120 Cabot Street in Brookline, MA for $637,500.  They sold the house in 2006 for $4,750,000.

17.     On or about July 31, 2002, the Debtor and Nannette Lewis purchased a vacation home located at 311 Summit Road in Richmond, MA for $2,200,000. They sold the vacation property on or about June 30, 2008 for $7,000,000.

18.     On or about November 28, 2006, the Debtor and Nannette Lewis purchased an upscale condominium located 120 Seaver Street in Brookline, MA for $1,835,000. They sold the condominium in 2009 for $2,350,000.

19.     On or about September 19, 2008, the Debtor and Nannette Lewis purchased a vacation property located at 423 Cone Hill Road in Richmond, MA for $850,000. On or about October 17, 2008, the Debtor and Nannette Lewis purchased a parcel adjacent to 423 Cone Hill Road in Richmond, MA for $600,000. In the aggregate, the combined property at 423 Cone Hill Road (the "423 Cone Hill Property") was worth $1,800,000 in August of 2010.  (The 423 Cone Property consisted of two independently purchases tracts of land.)

20.     On or about December 23, 2008, the Debtor and Nannette Lewis purchased a single-family home located at 45 Laurel Road in Brookline, MA (the "45 Laurel Road Property") for $2,368,000.  Nannette Lewis still resides at the 45 Laurel Road Property, but she has been marketing the property and a sale of the property is anticipated. According to Zillow, the  45 Laurel Road Property was listed for sale in April 2013 for $3,200,000.  The listing was removed in

September 2013 after the price was reduced to $2,900,000. The property was again listed in April 2014 for $2,985,000, but the listing was removed two months later.

### Sanford Bernstein Accounts

21.    Jointly or separately, Debtor and Nannette Lewis owned a number of investment accounts at Sanford Bernstein. From 2007 through 2013, those accounts combined have at all times held no less than $1,000,000. At their peak in July 2008 (after the $7 million sale of the 311 Summit Road property), the accounts held over $6 million.

22.    On January 4, 2007, Debtor and Nannette Lewis opened a joint investment account with Sanford Bernstein (joint account -2856) and therein deposited $2 million. This was their earliest account at Sanford Bernstein, and for over a year it was the only account the Debtor and Nannette Lewis had with Sanford Bernstein.

23.    On February 20, 2007—just one month after forming and funding the account—Debtor and Nannette Lewis re-titled the Sanford Bernstein joint account -2856by putting the account solely in  the name of Nannette Lewis.  The Trustee avers that, at all times relevant to this Complaint,  all of Nannette Lewis's accounts with Stanford Bernstein continued to be joint marital property, consistent with the Debtor and Nannette Lewis's later representations on financial statements.

24.    In May 2008, Nannette Lewis and the Debtor opened another account with Sanford Bernstein solely in Nannette Lewis's name - account -6015, and transferred nearly all of the assets in the -2856 account to new account - 6015. Account -6015 thereafter became the Debtor and Nanette Lewis's primary account, having as much as $6 million in assets held therein.

25.    In April 2009, Nannette Lewis and the Debtor began transferring the funds in account -6015—which held $2.3 million—to one or more of eight new accounts created at Sanford Bernstein, all of which were only associated with Nanette Lewis's name.  The accounts were -7669, -7750, -8720, -8721, -8682, -9718, -9720, and -3342.  By August 2009, these eight accounts held a combined $1.8 million.  Account -3342 was created in August 2009, and was funded with more than $900,000. It was closed in December 2009, and the funds were transferred to -8682, which functioned as the Debtor and Nannette Lewis's primary investment account thereafter.

### Boston Private Bank Accounts

26.    Debtor and Nannette Lewis owned a number of bank or investment accounts at Boston Private Bank. In the Spring of 2009 the value of these accounts at Boston Private Bank was roughly $2,000,000.  Trustee avers that at all times relevant to this Complaint, all of Debtor's and/or Nannette Lewis's accounts at the Boston Private Bank were joint marital property, consistent with the Debtor's and Nannette Lewis's later representations on financial statements.

### *Debtor and Nannette Lewis Continue to Purchase Property Together and Take on Debt While Creditors Begin to Close In*

27.     On January 22, 2008, Farmer's Bank and Trust Company obtained an attachment against all of Debtor's properties in the amount of $263,924.87.

28.     On October 8, 2008, American Defenders of New Hampshire, LLC, borrowed $137,500 (the "Nashua Baseball Loan") from Nashua Professional Baseball League, LLC in connection with the purchase of the Nashua Pride, an independent minor league baseball team located in Nashua, New Hampshire.

29.     On September 26, 2008—three days before their purchase of the first portion of the 423 Cone Hill Property for $800,000 was recorded—Debtor and Nannette Lewis wired $768,702 in joint funds to the Berkshire Bank to Anthony P. Doyle's client trust account.

30.     On October 16, 2008—one day before their purchase of the second portion of the 423 Cone Hill Property for $600,000 was recorded—Debtor and Nannette Lewis wired $575,019.60 in joint funds to the Berkshire Bank to Dennis J. Downing's conveyancing account.

31.     On October 21, 2008, Debtor borrowed $750,000 from HMK Enterprises, Inc.,  (the "HMK Loan")secured by a pledge of Debtor's rights to various shares, profits, and distributions from Watermill-Preferred Partners, L.P., a Delaware Limited Partnership. The Watermill Group, and its predecessor HMK Enterprises, were private strategic investment firms. Upon information and

belief, the Debtor was an Operations Partner of either the Watermill Group or HMK in 2004.

32.     In February 2009, American Defenders of New Hampshire, LLC obtained a $250,000 line of credit (the "Nashua Bank Loan") from the Nashua Bank to purchase equipment and inventory for baseball operations.  Each of the four investors therein—the Debtor, former Red Sox General Manager Daniel Duquette, Jeremiah O'Connor, and Terrance Allvord—co-signed the promissory note for the Nashua Bank Loan.

33.     Nannette Lewis also co-signed the promissory note and commercial security agreement for the Nashua Bank Loan.

34.     In approximately April 2009, the Debtor and Nannette Lewis applied for and received a loan secured by the 423 Cone Hill Property.  In making their application for this loan, the Debtor and Nannette Lewis completed a Uniform Residential Loan Application with Greylock Federal Credit Union, attached hereto and incorporated herein. (Exhibit B, Uniform Residential Loan Application [hereinafter "2009 Loan Application"]).

35.     In the 2009 Loan Application, the Debtor and Nannette Lewis reported jointly holding $4,450,000.00 in real estate assets, $4,000,000.00 in bank and investment accounts, and $1,271,690.00 in liabilities, for a total Net Worth of $7,178,310.00 (Exhibit B, 2009 Loan Application, at 2).

36.     On information and belief, the Debtor and Nannette Lewis assented to, executed or electronically executed the 2009 Loan Application.

37.    On August 21, 2009, the American Defenders of New Hampshire, LLC received a notice of default from the City of Nashua for failure to make payments under a concession agreement.

38.    As a result of the default and overall concerns about being repaid, Nashua Professional Baseball League, LLC demanded greater security from the Debtor for the Nashua Baseball Loan.

39.    On October 8, 2009, the Debtor, American Defenders of New Hampshire, LLC and Nashua Professional Baseball League, LLC amended and restated the Nashua Baseball Loan amount to $142,500, payable in full on December 31, 2009.

40.    In connection with the amended Nashua Baseball Loan, the Debtor signed a personal guaranty for the full amount of the amended loan.

41.    In connection with the amended Nashua Baseball Loan the Debtor also signed a loan agreement (the "Nashua Baseball Loan Agreement")in which he agreed to maintain at least $350,000 in a Sanford Bernstein investment account number -3342.  The Debtor represented to Nashua Professional Baseball League, LLC, verbally and in writing, that he had control and ownership of the accounts at Sanford Bernstein.

42.    In fact, as of the date of the Nashua Baseball Loan Agreement, the Sanford Bernstein account -3342,  was then titled solely in Nannette Lewis's name and had a balance of roughly $926,172.  That account was opened in

August of that year and would be closed in December of that year with a $0

balance.

43.     In Fall of 2009, Debtor borrowed $100,000 from Peter Gordon, an

abutting neighbor of the 423 Cone Hill Property. No promissory note was

contemporaneously created.

44.     In March 2010, Nashua Professional Baseball League, LLC initiated yet

another discussion for more security on the Nashua Baseball Loan. Debtor's

counsel at the time, Joe Rosen, asked if "the commitment to keep the money at

the bank" was "enough, like we did last time?"

45.     In April 2010, Joe Rosen asked if the Debtor could be removed from his

personal guaranty to Nashua Professional Baseball League, LLC and reiterated

the proposal for Debtor to maintain money in a bank account, "similar to what

we did before." Rosen noted that Debtor preferred that the account be with the

"same bank in MA" and "could explain why to you when we discuss."

46.     In May of 2010, the Debtor recognized that he was going to be sued by

Nashua Professional Baseball League, LLC, who up to that point had been "more

than accommodating."

47.     In May of 2010 , the Debtor and Nannette Lewis transferred a small

portion of the 423 Cone Hill Property, (a small part of Lot 35) to Peter and

Wendy Gordon for $4.

48.    On June 10, 2010, the Nashua Bank gave notice of the Nashua Bank Loan's maturity and demanded repayment of $255,580.31 from the Debtor, Nanette Lewis, and others.

49.    On June 16, 2010, Nashua Professional Baseball League, LLC brought suit against Debtor and Sanford Bernstein (as a trustee process defendant) in Norfolk Superior Court (NOCV2010-01103) for repayment of the Nashua Baseball Loan, as well as fees, costs, and interest.  In that lawsuit suit, Nashua Professional Baseball League, LLC sought judgment against the Debtor and sought an attachment of the Debtor's accounts at Sanford Bernstein, including account - 3342, in which the Debtor pledged to maintain at least $350,000.

50.    On June 24, 2010, the Debtor was served with process of the lawsuit brought by Nashua Professional Baseball League, LLC to collect on the Nashua Baseball Loan.

51.    On July 12, 2010, Nashua Professional Baseball League, LLC's motion for attachment against the Debtor's Sanford Bernstein accounts was allowed.

52.    Soon thereafter, Nashua Professional Baseball League, LLC served its attachment on Sanford Bernstein.  Sanford Bernstein responded, stating that there were no accounts at Sanford Bernstein in the Debtor's name.

53.    On or by June 30, 2010, the amount Debtor owed to Peter Gordon increased to $250,000.  According to Peter Gordon, he asked for and was given a promissory note on June 30, 2010.

54.     In July 2010,the Debtor offered Nashua Bank a second lien on the

45 Laurel Road Property to secure the Nashua Bank Loan.  Nashua Bank refused

to accept anything short of full repayment of the Nashua Bank Loan, and

proceeded to draft a complaint to be filed in Middlesex Superior Court.

### *Property Owned by the Debtor and Nannette Lewis Immediately Prior to the Fraudulent Transfers*

55.     Prior to August 6, 2010, the Debtor and Nannette Lewis owned, as

tenants by the entirety, the 45 Laurel Road Property. According the Debtor's and

Nannette Lewis's August 2010 financial statements this property was worth

between $2,500,000 and $3,000,000, and subject to a mortgage of roughly

$1,100,000.

56.     Prior to August 6, 2010, the Debtor and Nannette Lewis owned, as

tenants by the entirety, the 423 Cone Hill Property. According the Debtor's and

Nannette Lewis's August 2010 financial statements this property was worth

$1,800,000, subject to a mortgage of roughly $640,000.

57.     Prior to August 6, 2010, Nannette Lewis owned shares in Nannette

Lewis Interiors, Inc. These shares of Nannette Lewis Interiors, Inc., or a portion

thereof, were marital property of the Debtor and Nannette Lewis.  Moreover, on

information and belief, Nannette Lewis Interiors, Inc. was capitalized with a

$500,000.00 loan from joint marital funds. While the Trustee is unaware of any

valuations of the business, Nannette Lewis has disclosed that she received

$30,000.00 per month (or $360,000.00 per year) in income from the business.[1]

58.    Prior to August 6, 2010, Nannette Lewis owned an interest in the Davis

Venture Fund. This interest in the Davis Venture Fund, or a portion thereof, was

marital property of the Debtor and Nannette Lewis. According to David Venture

Fund documents, as of September 30, 2013, Nannette Lewis's interest in the fund

was worth roughly $200,000.

59.    Prior to August 6, 2010, Nannette Lewis owned membership interests

in Division 50 LLC. These membership interests of Division 50 LLC, or a portion

thereof, were marital property of the Debtor and Nannette Lewis.

60.    Prior to August 6, 2010, the Debtor and Nannette Lewis jointly owned

membership interests in Charles River LLC.

61.    Prior to August 6, 2010, the Debtor and Nannette Lewis jointly owned

home furnishings, furniture, housewares, collectibles, and other items of

valuable personal property.

62.    Prior to August 6, 2010, the Debtor and Nannette Lewis jointly owned

valuable artwork and antiques.

63.    Prior to August 6, 2010, upon information and belief, the Debtor and

Nannette Lewis, owned the following bank or credit accounts, identified below

---

[1] Nannette Lewis dissolved Nannette Lewis Interiors, Inc. on December 16, 2014, two
days before the hearing on Nannette Lewis's opposition of a motion seeking a Rule 2004
of examination of her.

by the last four digits of each account: American Express account ending -2006;

Bank of America accounts ending -3699 and -7105; Boston Private Bank accounts

ending -5568 and -0838; Capital One Bank account ending -2671; Century Bank

accounts ending -2418 and -8502; Citibank account ending -9047; RBS Citizens

Bank MA account ending -0201; Greylock Federal Credit Union accounts ending

-4780 and -1796; Sanford Bernstein accounts ending -3342, -9718, -8682, -9721,

-9722, -6015, -2856, and -7670; and Sovereign Bank account ending -5847.

64.     Prior to August 6,2010, the Debtor and Nannette owned roughly

$1,000,000 in investment and bank accounts at Sanford Bernstein. Regardless of

how ownership to these accounts were titled, the funds held therein were marital

property of the Debtor and Nannette Lewis.

65.     On information and belief, Prior to August 6, 2010, the Debtor and

Nannette owned funds in various investment and bank accounts at Boston

Private Bank. Regardless of how ownership to these accounts was titled, the

funds held therein were marital property of the Debtor and Nannette Lewis.

66.     Prior to August 6, 2010, the Debtor and Nannette Lewis owned a 1970

Mercedes convertible automobile. Regardless of how ownership to this

automobile was titled, this automobile was marital property of the Debtor and

Nannette Lewis.

67.     Prior to August 6, 2010, the Debtor and Nannette Lewis owned a

Toyota automobile.  Regardless of how ownership to this automobile was titled,

this automobile was marital property of the Debtor and Nannette Lewis.

68.     In July 2010, the Debtor and Nannette Lewis had an estimated net

worth of approximately $5.2 million. (Exhibit A, Lewis § 341 Tr., at 151-53).

### The Debtor and Nannette Lewis Attempt to Use a Divorce to Conceal Their Fraudulent Transfers From Creditors

69.     Aware of the existing lawsuit of Nashua Professional Baseball League,

LLC for roughly $145,000 (a debt secured by the Debtor's promise to keep

$350,000 at Sanford Bernstein) and the impending lawsuit by the Nashua Bank

for roughly $250,000 (a debt guaranteed by Nannette Lewis and the Debtor), the

Debtor and Nannette Lewis began the process of getting a divorce. (Exhibit A,

Lewis § 341 Tr., at 72).

70.     On information and belief, in the months of June, July, August, and

September of 2010, the Debtor and Nannette Lewis purposefully concealed their

plans to get a divorce, and the divorce itself, from numerous creditors in an effort

to delay, defraud, and defeat creditors' claims on the Debtor and Nannette's

marital assets.

### The Debtor's Divorce Financial Statement Dated July 29, 2010

71.     On July 29, 2010, the Debtor completed a Probate and Probate Court

Department Financial Statement [hereinafter "Debtor's Divorce Financial

Statement"] wherein the Debtor made representations about assets, liabilities, his

income, and other financial data to the Probate and Probate Court.  The Debtor

Divorce Financial Statement is attached hereto and incorporated herein. (Exhibit

C, Debtor's Divorce Financial Statement, at 1-9).  In the Debtor's Divorce

Financial Statement, he makes the following statements (among others) under

the penalties of perjury:

    a)  that the 423 Cone Hill Property was owned by the Debtor jointly
with Nannette Lewis and had a fair market value of $1,800,000
subject to a mortgage of $600,000, with net equity of $1,200,000;

    b)  that the 45 Laurel Road Property was owned by the Debtor jointly
with Nannette Lewis and had a fair market value of $3,000,000
subject to a mortgage of $1,100,000, with net equity of $1,900,000;

    c)  that the Debtor owns a 1971 Mercedes automobile worth $35,000;

    d)  that the Debtor owns a joint Boston Private Bank Checking account
with Nannette Lewis containing $2,500;

    e)  that the Debtor owns $10,000 worth of jewelry;

    f)  that the Debtor and Nannette Lewis owe a joint and several debt to
the Nashua Bank in the amount of $230,000;

    g)  that the Debtor and Nannette have a joint and several debt to John
Stabile [owner of Nashua Professional Baseball League, LLC] of
$145,000;

    h)  that the Debtor has a $100,000 debt to the law firm Burton Winnick;
and

    i)  that the Debtor has credit card debt of $100,000.

72.    On the Debtor's Divorce Financial Statement, the Debtor failed to list

the HMK Loan.  On the day that the Debtor completed the Debtor Divorce

Financial Statement (July 29, 2010), the Debtor owed $790,598.12 pursuant to the

HMK Loan.

73.    On the Debtor's Divorce Financial Statement, the Debtor failed to list

the Gordon Loan.  On the day that the Debtor completed the Debtor Divorce

Financial Statement (July 29, 2010), the Debtor owed $250,000 pursuant to the Gordon Loan.

74.     On the Debtor's Divorce Financial Statement, the Debtor failed to list his interest in Watermill Preferred Partners, which was encumbered by the HMK Loan, as an asset.

75.     On the Debtor's Divorce Financial Statement, the Debtor failed to list his interest in Conant Controls Inc., as an asset.

76.     On the Debtor's Divorce Financial Statement, the Debtor failed to list his interest in Charles River LLC, as an asset.

77.     On the Debtor's Divorce Financial Statement, the Debtor failed to list his interest in investments and bank accounts with Sanford Bernstein, valued at roughly $1,000,000 as an asset.

78.     On the Debtor's Divorce Financial Statement, the Debtor failed to list any home furnishings, furniture, housewares, collectibles, and other items of valuable personal property, that were jointly owned by the Debtor and Nannette Lewis.

79.     On the Debtor's Divorce Financial Statement, the Debtor failed to list art and antiques that were jointly owned by the Debtor and Nannette Lewis.

80.     On the Debtor's Divorce Financial Statement, the Debtor failed to total his assets or total his liabilities, as required by the financial statement.

### *The Separation Agreement*

81.     On August 6, 2010, (prior to filing for divorce) the Debtor and Nannette Lewis entered into a separation agreement (the "Separation Agreement").  The Separation Agreement is attached hereto and incorporated herein as Exhibit  D.  (Exhibit A, Lewis § 341 Tr., at 10-12; Exhibit D, Leslie and Nannette Lewis Separation Agreement, Aug. 6, 2010 [hereinafter "Separation Agreement"]).

82.     The Debtor was not represented by counsel during the divorce negotiations or proceedings, while Nannette Lewis was represented by attorneys from the law firm Prince Lobel Tye LLP throughout the process. (Exhibit A, Lewis § 341 Tr., at 2-5, 94).

83.     Nannette Lewis's attorneys drafted the Separation Agreement and instructed the Debtor to sign it.  There was no negotiation of the material terms. (Exhibit A, Lewis § 341 Tr., at 130-31).

84.     The Debtor does not recall Nannette Lewis's attorneys advising him to seek his own legal counsel. (Exhibit A, Lewis § 341 Tr., at 130-31).

85.     At the Debtor's 342 Meeting, the Debtor stated that he and Nannette Lewis's marital estate had an approximate net worth of $5.2 million at the time of

the Divorce (Exhibit A, Lewis § 341 Tr., at 151-53; see generally, Exhibit D, the

Separation Agreement).[2]

86.    At the time of the execution of the Separation Agreement, the Debtor

reported a monthly income of about $3,000.00 and Nannette Lewis reported a

monthly income of about $30,000.00 from Nannette Lewis Interiors, Inc.. (Exhibit

A, Lewis § 341 Tr., at 146, 153).

87.    Pursuant to the Separation Agreement, Nannette Lewis was supposed

to pay the Debtor an aggregate $700,000.00 in settlement of the marital assets (the

"Symbolic Payment"). (Exhibit A, Lewis § 341 Tr., at 11-12).

88.    Under the terms of the Separation Agreement, the Symbolic Payment

was required to be made as follows: $196,000 within fourteen days of the Divorce

Judgment; $250,000 upon the sale of the 423 Cone Hill Property; and $250,000

upon the full and final release of Nannette Lewis from the parties joint debt

owed to the Nashua Bank.

89.    Under the terms of the Separation Agreement, Nannette Lewis

retained the bulk of the marital estate, either outright or as sole beneficiary of

Cone Hill Trust. (Exhibit A, Lewis § 341 Tr., at 57, 74-75).

90.    With the exception of the mortgages tied to real estate retained by

Nannette Lewis, the Separation Agreement assigned all bona fide debts to the

---

[2] The Trustee has in his possession what appear to be two different versions of the
Separation Agreement. The Trustee has not yet conducted a 2004 examination or other
discovery and thus is not presently aware which version of the agreement is controlling.

Debtor individually. (Exhibit A, Lewis § 341 Tr., at 12-13 (Burton Winnick), 15-16

(John Stabile/Nashua Professional Baseball League, LLC)).

91.    The Separation Agreement also purported to release Nannette Lewis

from several joint liabilities and she took the remainder of the couple's

$5.2 million estate, less the $46,000 paid to the Debtor. (Exhibit A, Lewis § 341 Tr.,

at 151-53).

92.    Under the Separation Agreement Nannette Lewis would receive the

following[3]:

    a)  the 423 Cone Hill Road Property, having a fair market value of
$1,800,000 subject to a mortgage of $640,000, with net equity of
$1,160,000;

    b)  that the 45 Laurel Road Property, having a fair market value of
$2,450,000 subject to a mortgage of $1,100,000, with net equity of
$1,1350,000;

    c)  all Sanford Bernstein investment and bank accounts valued at
roughly $1,000,000;

    d)  the Century Bank Account containing $100,000 in cash;

    e)  the home furnishings worth roughly $100,000;

    f)  the arts and antiques worth roughly $60,000;

    g)  jewelry worth $100,000;

    h)  all of the shares in Nannette Lewis Interiors, Inc., with an
undisclosed value;

---

[3] For the purposes of this paragraph the Trustee has used values taken from the
Nannette Lewis Divorce Financial Statement, which was completed and executed by
Nannette Lewis on August 9, 2010, three days after the majority of property transfers
took place.

   i)  all of the partnership / membership interests in Davis Venture Fund, with an undisclosed value;

   j)  all of the membership interests in Charles River LLC, with an undisclosed value; and

   k)  all of the interest in Division 50 LLC, with an undisclosed value.

93.    Pursuant to the Separation Agreement Nannette Lewis would assume liability for the following debts:

   a)  the mortgage on the 423 Cone Hill Road Property in an amount of $640,000;

   b)  the mortgage on the 45 Laurel Road Property in an amount of $1,100,000; and

   c)  the debt from Nannette Lewis to Nannette Lewis Interiors, Inc. in an amount of $500,000.[4]

94.    In sum, pursuant to the Separation Agreement Nannette Lewis received at least $3,370,000 in *net* assets, without attributing any value to the numerous business interests that she retained.

95.    Under the Separation Agreement the Debtor was to receive the following:

   a)  all of the Debtor's shares in Boston Baseball Inc., having negligible or no value;

   b)  all of the Debtor's shares in Conant Controls Inc., worth roughly $100,000;

   c)  All of the Debtor's interest in Nokona Leather Goods Co. and /or Fenway Nokona Associates Inc. (collectively "Nokona"), having

---

[4] The Trustee has not yet fully investigated the loan from Nannette Lewis Interiors Inc., to Nannette Lewis, and reserves the right to amend this complaint as facts and circumstances are discovered regarding that transaction.

negligible or no value, and possibly not even owned by the Debtor
on August 6, 2010, when the Separation Agreement was signed;

d) all of the Debtor's shares or interest in Preferred Rubber Products,
Inc. worth roughly $100,000.  On information and belief, the shares
of Preferred Rubber Products, Inc. were owned through various
entities by Watermill Preferred Partners LP.  On information and
belief the Debtor's interest in Watermill Preferred Partners LP and
the Debtor's interest in Preferred Rubber Products, Inc. was fully
encumbered by the HMK Loan in an amount of  $790,598.12;

e) Jewelry valued at $10,000;

f) $196,000 on the Date of the Judgment Divorce Nisi, reduced by
$46,000 that the Debtor had received prior to the execution of the
Separation Agreement, for a net amount owed of $150,000 (part of
the "$700,000" Symbolic Payment);

g) $250,000 upon the sale of the 423 Cone Hill Property (part of the
"$700,000" Symbolic Payment); and

h) $250,000, reduced by any amount of the $250,000 joint and several
debt to the Nashua Bank, that Nannette Lewis is required to
pay(part of the "$700,000" Symbolic Payment).

96.     Pursuant to the Separation Agreement the Debtor would assume

liability for the following debts:

a) the joint and several Nashua Bank Loan in the amount of roughly
$250,000; and

b) the Nashua Baseball Loan in an amount of $145,000 (originally
secured by a promise to keep $350,000 in a Sanford Bernstein
Account).

97.     In sum, pursuant to the Separation Agreement the Debtor was

supposed to receive roughly $115,000 in *net* assets.  However, the Separation

Agreement fails to provide for payment of the $250,000 Gordon Loan, fails to

provide for payment of the Debtor's $100,000 debt to Burton Winnick, and fails

to provide for payment of the HMK Loan in the amount of $790,598.12.   When

the aforementioned additional debts are taken into consideration, the Separation

Agreement, even if complied with, renders the Debtor woefully insolvent.

98.    The Debtor did not receive any of the Symbolic Payment required by

the Separation Agreement other than $46,000, which he received before the

Separation Agreement was even presented.  (Exhibit A, Lewis § 341 Tr., at 60)

99.    The drafting and execution of the Separation Agreement was part of a

concerted effort by the Debtor and Nannette Lewis to delay, defraud, and defeat

creditors' claims on the Debtor and Nannette's marital assets.

100.    On its face, the Separation Agreement's terms were inequitable and

inadequate to meet the financial needs of the Debtor.  The terms of the

Separation Agreement and the related fraudulent transfers left the Debtor in a

financial condition that was not commensurate with the standard of living

previously enjoyed by the Debtor; they also left the Debtor insolvent. (Exhibit A,

Lewis § 341 Tr., at 131-32).

101.    The Separation Agreement's terms and the related fraudulent transfers

released Nannette Lewis from all marital indebtedness that had come due and

provided her with the entire balance of the multi-million dollar marital estate,

less the $46,000 paid to the Debtor.

***Before filing for Divorce, the Debtor and Nannette Lewis Fraudulently Transfer
All Valuable Assets to Nannette Lewis and Lisa London of the Cone Hill Trust***

102.    On August 6, 2010, the Debtor and Nannette Lewis fraudulently

transferred the 45 Laurel Road Property, for no or nominal consideration, to

Nannette Lewis, as sole owner.  (See <u>Exhibit E</u>, Norfolk Registry District of the

Land Court, Certificate No. 180960, Aug. 6, 2010). Nannette Lewis immediately

executed a Declaration of Homestead.

103.    The 45 Laurel Road Property had a fair market value of

approximately $2,450,000 - $3,000,000 at the time of transfer, subject to mortgages

of approximately $1,100,000.[5]

104.    On or around August 6, 2010, the Debtor transferred all of his

rights in and shares of Nannette Lewis Interiors, Inc., for no or nominal

consideration, to Nannette Lewis.

105.    On or around August 6, 2010, the Debtor transferred all of his

rights in the Davis Venture Fund, for no or nominal consideration, to Nannette

Lewis.

106.    On or around August 6, 2010, the Debtor transferred all of his

rights in the membership interests of Division 50 LLC, for no or nominal

consideration, to Nannette Lewis.

107.    On or around August 6, 2010, the Debtor transferred all his rights

in the membership interests in Charles River LLC, for no or nominal

consideration, to Nannette Lewis.

108.    On or around August 6, 2010, the Debtor transferred all of his

rights in valuable home furnishings, furniture, housewares, collectibles, and

---

[5] According to Zillow, the Brookline Property was listed for sale by Nannette Lewis on
April 15, 2014, for $2,895,000.00, though this listing was removed on June 3, 2014.

other items of valuable personal property, for no or nominal consideration, to Nannette Lewis.

109.    On or around August 6, 2010, the Debtor transferred all of his rights in valuable artwork and antiques, for no or nominal consideration, to Nannette Lewis.

110.    On or around August 6, 2010 the Debtor transferred all of his rights in the Sanford Bernstein investment and bank accounts holding roughly $1,000,000, for no or nominal consideration, to Nannette Lewis.

111.    On or around August 6, 2010, the Debtor transferred all his rights in and to the following bank, investment, and / or credit accounts, for no or nominal consideration, to Nannette Lewis: American Express account ending -2006; Bank of America accounts ending -3699 and -7105; Boston Private Bank accounts ending -5568 and -0838; Capital One Bank account ending -2671; Century Bank accounts ending -2418 and -8502; Citibank account ending -9047; RBS Citizens Bank MA account ending -0201; Greylock Federal Credit Union accounts ending -4780 and -1796; Sanford Bernstein accounts ending -3342, -9718, -8682, -9721, -9722; -6015, -2856, and -7670; and Sovereign Bank account ending -5847.

112.    On or around August 6, 2010, the Debtor transferred all his rights in and to an unknown amount of cash and valuable securities, for no or nominal consideration, to Nannette Lewis.

113.    On or around August 6, 2010, the Debtor transferred all his

ownership interest in a 1970 Mercedes convertible automobile, for no or nominal

consideration, to Nannette Lewis, as sole owner.

114.    On or around August 6, 2010, the Debtor transferred all his

ownership interest in a Toyota automobile, for no or nominal consideration, to

Nannette Lewis, as sole owner.

### *Nannette Lewis's Divorce Financial Statement Dated August 9, 2010*

115.   On August 9, 2010, (after the above property was transferred)

Nannette Lewis completed a Probate and Probate Court Department Financial

Statement [hereinafter "Nannette Lewis Divorce Financial Statement"] wherein

Nannette Lewis made representations about assets, liabilities, her income, and

other financial data to the Probate and Probate Court. (Exhibit F, Nannette

Divorce Financial Statement, at 1-9). In the Nannette Lewis Divorce Financial

Statement she made the following statements (among others) under the penalties

of perjury:

    a)  that the 423 Cone Hill Road Property is owned by the Debtor
jointly with Nannette Lewis and has a fair market value of
$1,800,000 subject to a mortgage of $640,000, with net equity of
$1,160,000;

    b)  that the 45 Laurel Road Property is owned by the Debtor jointly
with Nannette Lewis and has a fair market value of $2,450,000
subject to a mortgage of $1,100,000, with net equity of $1,1350,000;

    c)  that Nannette Lewis owns the 1971 Mercedes automobile worth
$20,000;

    d)  that Nannette Lewis has a checking account at Century Bank
containing $120,000;

e) that Nannette Lewis had a brokerage account at Sanford Bernstein with a value of approximately $ 1,000,000;

f) that Nannette Lewis owned home furnishings worth $100,000;

g) that Nannette Lewis owned arts and Antiques worth $60,000;

h) that Nannette Lewis owned jewelry worth $100,000;

i) that Nannette Lewis and the Debtor have a joint and several debt to the Nashua Bank in the amount of $250,000;

j) that Nannette Lewis has a $500,000 personal loan to her business, Nannette Lewis Interiors, Inc.;

k) that Nannette Lewis has a total credit card debt of $25,000;

l) that Nannette Lewis's total assets were $3,910,500; and

m) that Nannette Lewis's total liabilities were $ 775,000.

116.   While the Debtor listed the $145,000 Nashua Baseball Loan as joint and several, Nannette Lewis failed to list that debt on her Divorce Financial Statement.

117.   On the Nannette Lewis Divorce Financial Statement, Nannette Lewis failed to list the HMK Loan of $790,598.12.

118.   On the Nannette Lewis Divorce Financial Statement, Nannette Lewis failed to list the Gordon Loan of $250,000.

119.   On the Nannette Lewis Divorce Financial Statement, Nannette Lewis failed to provide values for the following entities, which she had an ownership in:  Nannette Lewis Interiors, Inc., Davis Venture fund, Division 50 LLC, and Charles River LLC.

***In Violation of the Separation Agreement, and Prior to Filing for Divorce,
Nannette Lewis and Lisa London Use The Cone Hill Trust to Shield the
423 Cone Hill Property from Creditors***

120.     On August 10, 2010, Nannette Lewis and Lisa London formed a nominee trust known as the Cone Hill Trust Road Nominee Trust (the "Cone Hill Trust").  Lisa London was appointed trustee of the Cone Hill Trust.

121.     On August 10, 2010, the Debtor and Nannette Lewis transferred their interest in the 423 Cone Hill Property to the Cone Hill Trust for no or nominal consideration. The deed, which was executed on August 10, 2010 but not recorded until August 20, 2010, states that the purpose of the transfer was for "estate planning" purposes. (See Exhibit G, Berkshire Middle Registry District of the Land Court, Doc. No. 37087, Bk. 00037 Pg. 73, Aug. 10, 2010 [hereinafter "Deed to Cone Hill Trust"]).

122.     This fraudulent transfer of 423 Cone Hill Property was done in breach of the terms of the Separation Agreement, which required that the 423 Cone Hill Property be transferred solely to Nannette Lewis.

123.     The 423 Cone Hill Property, had a fair market value of at least $1,800,000 at the time it was transferred, subject to a mortgage of approximately $640,000 for the benefit of Greylock Federal Credit Union.

124.     Following the above described transfer, the Debtor remained in possession of the 423 Cone Hill Property, resided therein, and continued to make the entire mortgage payment directly to Greylock Federal Credit Union, the holder of the mortgage.  (Exhibit A, Lewis § 341 Tr., at 132-33).

125.    All of transfers made by the Debtor and Nannette Lewis between August 5, 2010 and August 21, 2010 referenced above, were without fair consideration and collectively rendered the Debtor insolvent. (See Exhibit A, Lewis § 341 Tr., at 4). The Debtor now has little or no assets and no real property titled in his name. (*Id.*)

### *Creditors Begin to Learn of the Fraudulent Transfers and Take Action*

126.    On August 12, 2010, Peter Gordon—who claimed to have learned of the Lewis's divorce and an imminent transfer of all marital assets, including the 423 Cone Hill Property, filed suit in Norfolk County Superior Court (NOCV2010-01472). Gordon sought an immediate preliminary injunction preventing the transfer of the 423 Cone Hill Property and enjoining the recording of a deed.

127.    On August 16, 2010, Debtor and Nannette Lewis filed for divorce in Norfolk Probate Court (NO10D11288JP).

128.    On August 17, 2010, a hearing was held at Norfolk Superior Court on Peter Gordon's motion for a preliminary injunction. After the Superior Court hearing, "at which both parties were represented by counsel," the injunction issued, enjoining any transfer of the 423 Cone Hill Property.

129.    Also on August 17, 2010, a hearing was held by the Probate Court regarding the Debtor and Nannette Lewis's divorce.

130.    The Probate Court was presented with the Separation Agreement *after* it was signed and *after* most of the transfers made pursuant to the Separation Agreement.

131.   The transfer of assets pursuant to the Separation Agreement was undisputed by the Debtor and Nannette Lewis.

132.   The Separation Agreement did not merge into the Order of the Probate Court.

133.   On information and belief, during the August 17, 2010 hearing in the Probate Court, neither Nannette Lewis nor the Debtor informed the Probate Court of Peter Gordon's injunction hearing scheduled for that same day.

134.   On information and belief, during the August 17, 2010 hearing in the Probate Court, neither Nannette Lewis nor the Debtor informed the Probate Court of Nashua Professional Baseball League LLC's lawsuit seeking judgment against the Debtor and attachment of Sanford Bernstein account - 3342, in which the Debtor pledged to maintain at least $350,000.

135.   Because the Separation Agreement was not fair and reasonable, the Debtor and Nannette Lewis's representations made to the Family and Probate Court were inaccurate. (Exhibit A, Lewis § 341 Tr., at 131-32).

136.   Despite the injunction prohibiting any transfer of the 423 Cone Hill Property, on August 20, 2010, the transfer of the 423 Cone Hill Property was recorded.

137.   Three days later, on August 23, 2010, the Nashua Bank filed its complaint against Nannette Lewis, the Debtor, and the other principals of American Defenders of New Hampshire, LLC in Middlesex Superior Court.

138.   On August 31, 2010, a hearing was held on the Nashua Bank's request for an attachment on the 45 Laurel Road Property.  Nannette Lewis was given notice of the hearing but failed to appear. The attachment was allowed by order dated September 3, 2010.

139.   After filing, Nashua Bank learned of the transfer of  the 423 Cone Hill Property to the Cone Hill Trust.  Nashua's Bank's counsel noted in an internal email that "the transfer makes it technically impossible to attach this property; however the transfer can be set aside as a fraudulent conveyance."

140.   On September 17, 2010, the Probate Court entered Judgment Nisi. The Separation Agreement did not merge into the Probate Court's order.

141.   On information and belief, during the September 17, 2010, hearing in the Probate Court neither Nannette Lewis nor the Debtor informed the Probate Court of the injunction achieved by Peter Gordon on August 17, 2010.

142.    On information and belief, during the September 17, 2010, hearing in the Probate Court neither Nannette Lewis nor the Debtor informed the Probate Court of Nashua Bank's pending lawsuit against both the Debtor and Nannette Lewis.

143.   On information and belief, during the September 17, 2010, hearing in the Probate Court neither Nannette Lewis nor the Debtor informed the Probate Court of Nashua Bank's September 3, 2010, attachment of the 45 Laurel Road Property.

144.   On information and belief, during the September 17, 2010, hearing in the Probate Court neither Nannette Lewis nor the Debtor informed the Probate Court of Nashua Professional Baseball League LLC's lawsuit seeking judgment against the Debtor and attachment of Sanford Bernstein account - 3342, in which the Debtor had pledged to maintain at least $350,000.

145.   On information and belief the Debtor and Nannette Lewis purposefully concealed their divorce from creditors such as Peter Gordon, the Nashua Bank, and Nashua Professional Baseball League, LLC.

***In Violation of the Separation Agreement, and Without Court Approval, Nannette Lewis and  the Debtor Attempt to Modify the Terms of the Separation Agreement to Give the Debtor Even Less of the Marital Estate***

146.   On September 23, 2010, less than a month after the divorce filing and just one week after the Judgment Nisi was entered, the Debtor and Nannette Lewis purported to modify the terms of the Separation Agreement using a document entitled "Agreement for Modification."[6] (Exhibit A, Lewis § 341 Tr., at 72, 128; Exhibit H, Leslie Lewis and Nannette Lewis, Agreement for Modification, Sept. 23, 2010 [hereinafter "Agreement for Modification"]).

147.   Upon information and belief, the Agreement for Modification was drafted by Nannette Lewis's attorneys absent any negotiation, and while the Debtor was still unrepresented.

---

[6] While the Debtor testified that he has no recollection of signing Agreement for Modification, he authenticated his signature on the document. (Exhibit A, Lewis § 341 Tr., at 62-65).

148.   The Agreement for Modification was neither presented to nor approved by the Norfolk County Probate Court. [7] (Exhibit H, Agreement for Modification, at 1-2). This amounted to a violation of the very terms of the Separation Agreement, which required that "[a]ny modifications must be approved by the Probate and Probate Court and incorporated into a judgment or order thereof." (Exhibit D, Separation Agreement, at 10-11).

149.   Agreement for Modification purports to relieve Nannette Lewis of the obligation to pay the Debtor roughly $350,000.00 to $400,000.00 owed under the original Separation Agreement.  The modification purports to reduce the amount of remaining cash payment "owed" to the Debtor from $150,000 to $50,000.

150.   The Debtor testified at the § 341 meeting that Nannette Lewis never made any additional payments, including the $50,000 amount stated in the Agreement for Modification.

151.   The Agreement for Modification has no legal effect in the absence of court approval, among other reasons.

152.   The Trustee avers that Nannette Lewis and the Debtor executed the Agreement for Modification in an effort to delay, defraud, and defeat creditors' claims on the Debtor and Nannette's marital assets.

---

[7] Because the Separation Agreement was incorporated into the divorce judgment of the Norfolk County Probate Court, the parties could not modify it without seeking relief from the court.

### *Nannette Lewis and the Debtor Settle With Some Creditors*

153.   On September 27, 2010, Nannette Lewis requested a payoff amount of the Nashua Bank Loan. She was advised that a payoff received by September 30th was $262,775.21. The terms of the payoff were negotiated by Prince Lobel & Tye.

154.   On September 28, 2010, Nannette Lewis wired $262,775.21 to Nashua Bank's attorney from a Sanford Bernstein account.

155.   On September 30, 2010, Nashua Professional Baseball League, LLC's attorney learned of the payoff to Nashua Bank and wrote to Debtor's attorney Joe Rosen indicating that this made Nashua Professional Baseball League, LLC "the last man standing."

156.   On October 1, 2010, Joe Rosen replied, admitting that Nashua Bank was paid and stating that "the reason is because Nanette [*sic*] (Buddy's ex-wife) had signed personally too. Nanette [*sic*] paid the bank and is withholding the amount from Buddy's settlement."

157.   On information and belief, up until receiving the email from the Debtor's attorney referred to in the paragraph above,  neither Nashua Professional Baseball League, LLC nor its attorney knew that the Debtor and Nannette Lewis were getting a divorce.

158.   On October 25, 2010, Peter Gordon reached a settlement with Nannette Lewis and Lisa London whereby Lisa London, as trustee of the Cone Hill Trust, agreed to grant Gordon a mortgage in the amount of $250,000. This mortgage

was recorded on November 15, 2010. The Gordon lawsuit was voluntarily dismissed on November 18, 2010.

159.    In sum, the divorce and Separation Agreement were entered into with the actual intent to leave the Debtor with "negligible" assets and to render him insolvent, owing more to creditors than his assets were worth, while transferring the bulk of his assets to his spouse in an effort to defraud the Debtor's creditors. (Exhibit A, Lewis § 341 Tr., at 4).

160.    Nannette Lewis also violated the very terms of the Separation Agreement and failed to make all of the $700,000.00 in payments required by the Separation Agreement. Indeed, other than the initial $46,000 cash payment, Nannette Lewis did not make any further payments to the Debtor. (Exhibit A, Lewis § 341 Tr., at 73-75).

161.    Although prior to the divorce the Debtor was able to make regular interest payments on the loan to HMK Enterprises, Inc., after the Separation Agreement was signed, these payments ceased altogether.

162.    On November 4, 2010, HMK Enterprises, Inc. declared the Debtor in default under the HMK Loan and accelerated the HMK Loan.  The next month, Debtor forfeited to HMK by virtue of his pledge agreement a distribution of $572,643 to which he would have been entitled. Over the next two years, Debtor forfeited another roughly $100,000.

163.    In January 2011, Nashua Professional Baseball League, LLC obtained a judgment against Debtor in the amount of $174,514.57. In May 2011, an execution

in the amount of $181,727.81 was obtained by Nashua Professional Baseball

League, LLC against the Debtor.

164.    On February 4, 2014, the Debtor filed for Chapter 7 bankruptcy, less

than four years following his divorce from Nannette Lewis and the Separation

Agreement's division of the $5.2 million marital estate.

165.    In his schedules, the Debtor lists more than a dozen creditors and

$742,270.46 in total debts. The bulk of the estate's debts pre-existed the Debtor's

2010 divorce from Nannette Lewis. This includes the debts for the two largest

creditors: Nashua Professional Baseball League, LLC's claim for $308,320.66 and

HMK Enterprises, Inc.'s claim for $193,277.51.  These two debts alone comprise

two-thirds of all pre-petition claims against the estate.

### *Factual allegations that Show Clear Fraudulent Intent*
### *of the Debtor and Nannette Lewis*

166.    The Debtor's failure to list substantial debts on his Debtor Divorce

Financial Statement show the Debtor's fraudulent intent and amount to a fraud

on the Probate Court.  The missing debts include: the HMK Loan in an amount of

$790,598.12 and the Gordon Loan in an amount of $250,000.

167.    The Debtor's failure to list substantial assets on his Debtor Divorce

Financial Statement show the Debtor's fraudulent intent and amount to a fraud

on the Probate Court. The missing assets include: the Debtor's interest in home

furnishings, furniture, house-wares, collectibles, art, antiques, and other items of

valuable personal property; the Debtor's interest in the Sanford Bernstein

Accounts holding roughly $1,000,000; the Debtor's interest in Charles River LLC; the Debtor's interest in Conant Controls, Inc.; and the Debtor's interest in Watermill Preferred Partners.

*Investment Accounts*

168.   In the 2009 Loan Application, the Debtor and Nannette Lewis reported joint ownership of $2,000,000.00 in a "Boston Private" checking and/or savings account. (Exhibit B, 2009 Loan Application, at 2).

169.   Approximately 16 months later in their Divorce Financial Statements and Separation Agreement, neither the Debtor nor Nannette Lewis made any reference to the jointly held Boston Private account, which previously held $2,000,000 in joint funds.

170.   In the 2009 Loan Application, the Debtor and Nannette Lewis also reported joint ownership of $2,000,000 in a "Sanford Bernstein" checking and/or savings account. (Exhibit B, 2009 Loan Application, at 2).

171.   In her Divorce Financial Statement prepared approximately 16 months later, Nannette Lewis represented to the Probate Court that the Sanford Bernstein accounts only contained $1,000,000 and was the sole property of Nannette Lewis. (Exhibit F, Nannette Divorce Financial Statement, at 6). The Trustee avers that the substantial reductions in value and the gross discrepancies in the representations made by the Debtor and Nannette Lewis to the Probate Court regarding these investment accounts indicate a lack of good faith and fraudulent intent on the part of both parties

### *423 Cone Hill Road Property Transfer*

172.   Pursuant to the Separation Agreement, the Debtor and Nannette Lewis were required to transfer to Nannette Lewis the 423 Cone Hill Property. (Exhibit A, Lewis § 341 Tr., at 37).

173.   However, on August 10, 2010, the Debtor and Nannette Lewis instead transferred 423 Cone Hill Road to Lisa London, the trustee of the Cone Hill Trust. (See Exhibit G, Deed to Cone Hill Trust).

174.   The Debtor estimates that 423 Cone Hill Road had a fair market value of at least $1,800,000 at the time of the transfer. (Exhibit C, Debtor Divorce Financial Statement, at 4; Exhibit A, Lewis § 341 Tr., at 37).

175.   However, the transfer to Cone Hill Trust was made for no or nominal consideration. (See Exhibit G, Deed to Cone Hill Trust).

176.   The Debtor and Nannette Lewis's failure to comply with the terms of the Separation Agreement constituted a breach of the Probate Court's order and/or a misrepresentation made to the Probate Court.

177.   The Debtor and Nannette Lewis's attempt to amend the Separation Agreement with the Agreement for Modification was in direct violation of the Separation Agreement's terms and the Order of the Probate Court indicates a lack of good faith and fraudulent intent on the part of both parties to shield the property from marital creditors.

178.   The Debtor and Nannette Lewis's transfer and recordation of the deed to the 423 Cone Hill Property on August 20, 2010 was in direct violation of the

40

Norfolk Superior Court's August 17, 2010 injunction, and indicates a lack of good faith and fraudulent intent on the part of both parties to shield the property from marital creditors.

179.   The transfer of the property to the Cone Hill Trust, (controlled by Nannette Lewis's daughter) thereby putting it beyond the reach of Nashua Bank and other creditors, indicates a lack of good faith and fraudulent intent on the part of both parties to shield the property from marital creditors.

180.   On February 15, 2012, Lisa London, as Trustee of the Cone Hill Trust, sold 423 Cone Hill Property to Gideon Argov and Alexandra Fuchs for $1,550,000.00. On information and belief, the net proceeds of this transfer were paid over to Nannette Lewis.

### *Investment Accounts*

181.   In the 2009 Loan Application, the Debtor and Nannette Lewis reported joint ownership of $2,000,000.00 in a "Boston Private" checking and/or savings account. (Exhibit B, 2009 Loan Application, at 2).

182.   Approximately 16 months later in their Divorce Financial Statements and Separation Agreement, neither the Debtor nor Nannette Lewis made any reference to the jointly held Boston Private account, which previously held $2,000,000 in joint funds.

183.   In the 2009 Loan Application, the Debtor and Nannette Lewis also reported joint ownership of $2,000,000 in a "Sanford Bernstein" checking and/or savings account. (Exhibit B, 2009 Loan Application, at 2).

184.   In her Divorce Financial Statement prepared approximately 16 months later, Nannette Lewis represented to the Probate Court that the Sanford Bernstein accounts only contained $1,000,000 and was the sole property of Nannette Lewis. (Exhibit F, Nannette Divorce Financial Statement, at 6).

185.   The Trustee avers that the substantial reductions in value and the gross discrepancies in the representations made by the Debtor and Nannette Lewis to the Probate Court regarding these investment accounts indicate a lack of good faith and fraudulent intent on the part of both parties.

## COUNT I
**(against Nannette Lewis and Lisa London
for fraudulent transfers pursuant to
11 U.S.C. §§ 544 and 550 and M.G.L. c. 109A, Sections 5 and 8)**

186.   The Trustee reasserts and re-alleges each and every allegation contained in the proceeding paragraphs as if fully set forth herein.

187.   Pursuant to M.G.L. c. 109A, Section 5 (a)(1), the transfers of property by the Debtor and Nannette Lewis to Nannette Lewis and/or Lisa London as Trustee of the Cone Hill Trust were made with the actual intent to hinder, delay, or defraud the creditors of the Debtor.   These transfers included, but are not limited to, the transfers of the following assets (collectively, the "Transfers"): 423 Cone Hill Property; 45 Laurel Road Property; investment and bank accounts at Sanford Bernstein; investment and bank accounts at Boston Private Bank; bank accounts at Century Bank; other bank and investment accounts identified above; Mercedes and Toyota automobiles; Nannette Lewis

Interiors, Inc., Davis Venture fund, Division 50 LLC; Charles River LLC; home

furnishings; collectables; artwork; antiques; and other valuable property.

188.    The following facts (badges of fraud) regarding the Transfers show

the Debtor's and Nannette Lewis' actual fraudulent intent under M.G.L. c. 109A,

Section 5 (b):

a)  The Transfers by the Debtor and Nannette Lewis were made to
insiders Nannette Lewis and/or Lisa London as trustee of the Cone
Hill Trust.

b)  After the transfer of the 423 Cone Hill Property by the Debtor and
Nannette Lewis to Nannette Lewis and/or Lisa London, the Debtor
retained possession of the 423 Cone Hill Property for a number of
months and continued making mortgage payments due for said
property directly to the mortgagee, Greylock Federal.

c)  After the transfer by the Debtor of home furnishings, collectables,
artwork, antiques, and other valuable property located at 423 Cone
Hill Road, the Debtor retained in possession and continued to enjoy
such personal property for a number of months at the 423 Cone Hill
Property.

d)  The Debtor and Nannette Lewis concealed their divorce and
concealed the Transfers from creditors Peter Gordon, the Nashua
Bank, and Nashua Professional Baseball League, LLC.  The Debtor
and Nannette Lewis concealed the existence of lawsuits from the
Probate Court and also concealed  Modification Agreement from
the Probate Court.

e)  Before the Transfers were made, the Debtor and Nannette Lewis
were being sued or being threatened with suit by Peter Gordon, the
Nashua Bank, and Nashua Professional Baseball League, LLC.

f)  The Debtor and Nannette Lewis concealed assets and loans from
the Probate Court when they failed to properly disclose assets and
loans on their sworn financial statements.

g)  The Debtor and Nannette Lewis concealed assets by transferring
funds out of the Sanford Bernstein account number -3342 within
two months after Debtor disclosed the existence of the account to

Nashua Professional Baseball League, LLC and promised to keep at least $350,000 in the account.

h) The Debtor and Nannette Lewis concealed assets by transferring the Cone Hill Property to the Cone Hill Trust with Lisa London as trustee, even though the Separation Agreement called for the transfer to be to Nannette Lewis.

i) The Transfers, taken together amounted to substantially all of the Debtor's assets.

j) The Debtor was insolvent at the time of the Transfers or became insolvent shortly after the transfers were made.

k) All of the Transfers were made by the Debtor and Nannette Lewis for no or nominal consideration.

189.    Pursuant to M.G.L. c. 109A, Section 5 (a)(2), the Debtor did not receive a reasonably equivalent value in exchange for the Transfers.

190.    Pursuant to M.G.L. c. 109A, Section 5 (a)(2)(ii), at the time the Transfers were made, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. Such debts include but are not limited to: the Gordon Loan ($250,000), the HMK Loan ($790,598.12), the Nashua Bank Loan ($250,000), the Nashua Baseball Loan ($145,000), the debt to Burton Winnick ($100,000), and various credit card debt ($100,000).

191.    Pursuant to M.G.L. c. 109A, Section 5 (a)(2)(i), at the time the Transfers were made, the Debtor was engaged in transactions for which his remaining assets were unreasonably small in relation to those transactions and the his debts owed.

192.    Accordingly, the transfers by the Debtor and Nannette Lewis to Nannette Lewis and/or Lisa London as trustee of the Cone Hill Trust were fraudulent conveyances of the Debtor's interest in property pursuant to Mass. Gen. L. c. 109A, §5, which is avoidable pursuant to M.G.L. c. 109A, §8 and 11 U.S.C. § 550.

193.    As a direct and proximate result of the Debtor, Nannette Lewis' and Lisa London's fraudulent transfers, the Trustee and the Bankruptcy Estate have been damaged and are entitled to avoidance of the transfers, satisfaction of the Trustee's claims in accordance with G.L. c. 109A(8), judgment for the value of the fraudulently transferred property, and attachment or injunction against the transferee Defendants' property if the Trustee makes a motion for such attachment or injunction.

**COUNT II**
**(against Nannette Lewis and Lisa London**
**for fraudulent transfers pursuant to**
**11 U.S.C., §§ 544 and 550 and M.G.L. c. 109A, Sections 6 and 8)**

194.    The Trustee reasserts and re-alleges each and every allegation contained in the proceeding paragraphs as if fully set forth herein.

195.    In accordance with M.G.L. c. 109A, Section 6(a), when the transfers of property by the Debtor and Nannette Lewis to Nannette Lewis and/or Lisa London as Trustee of the Cone Hill Trust were made, the Debtor did not receive reasonably equivalent value in exchange for the transfers. These transfers included, but are not limited to, the transfers of the following assets (collectively,

45

the "Transfers"): 423 Cone Hill Property; 45 Laurel Road Property; investment and bank accounts at Sanford Bernstein; investment and bank accounts at Boston Private Bank; bank accounts at Century Bank; other bank and investment accounts identified above; Mercedes and Toyota automobiles; Nannette Lewis Interiors, Inc., Davis Venture fund, Division 50 LLC; Charles River LLC; home furnishings; collectables; artwork; antiques; and other valuable property.

196.    The Debtor was insolvent at the time of the Transfers or became insolvent as a result of the Transfers.

197.    Accordingly, the transfers by the Debtor and Nannette Lewis to Nannette Lewis and/or Lisa London as trustee of the Cone Hill Trust were fraudulent conveyances of the Debtor's interest in property pursuant to Mass. Gen. L. c. 109A, §6, which is avoidable pursuant to M.G.L. c. 109A, §8 and 11 U.S.C. § 550.

198.    As a direct and proximate result of the Debtor, Nannette Lewis' and Lisa London's fraudulent transfers, the Trustee and the Estate have been damaged and are entitled to avoidance of the transfers, satisfaction of the Trustee's claims in accordance with G.L. c. 109A(8), judgment for the value of the fraudulently transferred property, and attachment or injunction against the transferee Defendants' property if the Trustee makes a motion for such attachment or injunction.

## COUNT III

### (against Nannette Lewis for turnover of property of the Estate pursuant to 11 U.S.C. §§ 542(b) & 550)

199.     The Trustee reasserts and re-alleges each and every allegation contained in the proceeding paragraphs as if fully set forth herein.

200.     On August 6, 2010, the Debtor and Nannette Lewis entered into the Separation Agreement, which was a contractual agreement dividing the marital assets and liabilities between the parties.

201.     The Probate and Probate Court approved the Separation Agreement and entered Debtor and Nannette Lewis's divorce decree by court order.

202.     Nannette Lewis breached the Separation Agreement by attempting to modify the terms of the Separation Agreement in the absence of court approval via the September 2010 Agreement for Modification.

203.     Nannette Lewis failed to make the required payments under the Separation Agreement to the Debtor in settlement of the marital estate.

204.     The amounts owed by Nannette Lewis to the Debtor under the Separation Agreement is a debt to the Estate, is property of the Estate, and is payable to the Trustee.

205.     Nannette Lewis has failed to pay the amounts owed to the Debtor under the Separation Agreement to the Trustee as required to Section 542 (b) of the Bankruptcy Code.

206.    Pursuant to Sections 542 and 550 of the Bankruptcy Code, Plaintiff is entitled to an order requiring that Nannette Lewis turnover the funds owed to the Debtor under the Separation Agreement.

## COUNT IV
### (against Nannette Lewis for breach of contract pursuant to 11 U.S.C. §§ 544 & 550)

207.    The Trustee reasserts and re-alleges each and every allegation contained in the proceeding paragraphs as if fully set forth herein.

208.    On August 6, 2010, the Debtor and Nannette Lewis entered into the Separation Agreement, which was a contractual agreement dividing the marital assets and liabilities between the parties.

209.    Nannette Lewis breached the Separation Agreement, and the Probate Court's Order by attempting to modify the terms of the Separation Agreement in the absence of court approval via the September 2010 Agreement for Modification.

210.    Nannette Lewis breached the Separation Agreement by failing to make the required payments to the Debtor in settlement of the marital estate.

211.    Nannette Lewis breached the Separation Agreement by failing to transfer the marital property at 423 Cone Hill Property to Nannette Lewis.

212.    Nannette Lewis breached the Separation Agreement by instead transferring the marital property at 423 Cone Hill Property to Lisa London, as trustee of the Cone Hill Trust.

213.    The Separation Agreement is silent on the interest rate, and thus the state law interest rate of 12% applies from the date of breach.

214.    As a direct result of Nannette Lewis's breaches of the Separation Agreement, the Trustee and the Estate have suffered damages, including but not limited to the resulting insolvency of the Estate, costs and attorneys' fees from bringing this action, and for other damages to be determined at trial.

## COUNT V
**(against Nannette Lewis and Lisa London for Unjust Enrichment)**

215.    The Trustee reasserts and re-alleges each and every allegation contained in the proceeding paragraphs as if fully set forth herein.

216.    By transferring all or almost all of his net assets to Nannette Lewis and Lisa London as Trustee of the Cone Hill Trust, the Debtor conferred a benefit upon Defendants Nannette Lewis and Lisa London as Trustee of the Cone Hill Trust.

217.    Defendants Nannette Lewis and Lisa London, as Trustee of the Cone Hill Trust, knew they had received an extraordinary benefit from the Debtor.

218.    Defendants Nannette Lewis and Lisa London, as Trustee of the Cone Hill Trust, now retain the benefit of all of the Debtor's assets, to the detriment of the Trustee, the Bankruptcy Estate, and the Creditors.

219.    Allowing  Defendants Nannette Lewis and Lisa London to retain the extraordinary benefit of the Debtor's rightful half of the marital estate  given the

circumstances described above, would be inequitable and unjust without

payment for their value.

220.     In order to prevent unjust enrichment, the Trustee is entitled to a

declaration that half of the net value of the assets held by Nannette Lewis and

Lisa London as Trustee of the Cone Hill Trust, is the property of the Estate.  The

Trustee is also entitled to an order requiring the Defendants to turnover half of

the net assets to the Estate, along with, interest, attorneys' fees, and costs to the

Trustee.

### COUNT VI
**(against Nannette Lewis and Lisa London
for statutory action to reach and apply pursuant to
11 U.S.C. §§ 544 & 550 and M.G.L. c. 214, Section 3(8))**

221.     The Trustee reasserts and re-alleges each and every allegation

contained in the proceeding paragraphs as if fully set forth herein.

222.     The Separation Agreement and the above-described fraudulent

transfers were made with actual intent to defeat, delay or defraud the creditors of

the Debtor.  These transfers included, but are not limited to, the transfers of the

following assets: 423 Cone Hill Property; 45 Laurel Road Property; investment

and bank accounts at Sanford Bernstein; investment and bank accounts at Boston

Private Bank; bank accounts at Century Bank; other bank and investment

accounts identified above; Mercedes and Toyota automobiles; Nannette Lewis

Interiors, Inc., Davis Venture fund, Division 50 LLC; Charles River LLC; home

furnishings; collectables; artwork; antiques; and other valuable property

(collectively the "Assets").

223.    Pursuant to Mass. Gen. Laws. Ch. 214 § 3(8), the Trustee is entitled to

reach the Assets formerly held by the Debtor that are now owned, controlled or

in the possession of the Defendants Nannette Lewis and/or Lisa London the and

apply the Assets to the Estate.

**COUNT VII**
**(For Establishment of Resulting Trust/Constructive Trust against**
**Nannette Lewis and Lisa London)**

224.    The Trustee reasserts and re-alleges each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

225.    Nannette Lewis  and the Debtor wrongfully and fraudulently

transferred the 423 Cone Hill Property to Lisa London as Trustee of the Cone Hill

Trust, in an attempt to delay, defeat, and defraud creditors of the Debtor.  Lisa

London then sold the  423 Cone Hill Property and received the proceeds in the

rough amount of $900,000.

226.    The Defendants Nannette Lewis and Lisa London still wrongfully

possess and hold the aforementioned proceeds in the rough amount of $900,000.

227.    By reason of the fraudulent and otherwise wrongful manner in which

the Defendants have obtained their alleged right, claim, or interest in and to the

proceeds of roughly $900,000, this Court can hold that the Defendants have no

legal or equitable right, claim, or interest therein, and instead, that the

Defendants are involuntary trustees holding the roughly $900,000 in proceeds

and any profits therefrom in resulting trust/constructive trust for the Trustee
and the Estate.

228.   The Court can also hold that the Defendants have a duty to convey
such proceeds to the Trustee and the Estate forthwith.

229.   Wherefore, the Trustee requests a declaration from the Court that the
Defendants hold the roughly $900,000 in proceeds from the sale of the 423 Cone
Hill Property as a resulting trustee/constructive trustee for the benefit of the
Trustee and the Estate.

## **PRAYERS FOR RELIEF**

WHEREFORE, the Plaintiff, Alan L. Braunstein, Chapter 7 Trustee in
Bankruptcy for the Estate of Leslie B. Lewis, respectfully requests that this Court:

1.   Enter joint and several judgment in favor of the Trustee , against the
Defendants, Nannette Lewis and Lisa London, pursuant to Count I hereof, that
the Transfers of property were fraudulent, that said Transfers be avoided,
pursuant to 11 U.S.C. § 544(b) and Mass. Gen. L. 109A, §§ 5, 8, that said property
be deemed property of the  Estate pursuant to 11 U.S.C. § 550, and that further
transfers of the property be enjoined;

2.   Enter joint and several judgment in favor of the Trustee, against the
Defendants, Nannette Lewis and Lisa London, pursuant to Count II hereof, that
the Transfers of the property were fraudulent and that said Transfers be
avoided, pursuant to 11 U.S.C. § 544(b) and Mass. Gen. L. 109A, §§ 6, 8, that said

property be deemed property of the Estate pursuant to 11 U.S.C. § 550, further

Transfers of the property be enjoined;

3.       Enter judgment in favor of the Trustee, against the Defendant

Nannette Lewis, pursuant to Count III hereof, ordering that funds owed to the

Debtor under the Separation Agreement  is the property of the Estate pursuant to

11 U.S.C. §§ 542 and 550 and ordering Nannette Lewis to turnover such funds to

the Estate;

4.       Enter judgment in favor of the Trustee, against the Defendant

Nannette Lewis, pursuant to Count IV hereof, for breach of the contractual terms

of the Separation Agreement, ordering Defendant Nannette Lewis to make the

required payments to the Estate pursuant to 11 U.S.C. § 550, along with statutory

interest from the date of breach, attorneys fees, and costs of the Trustee for

bringing this action;

5.       Enter joint and several judgment in favor of the Trustee, against the

Defendants, Nannette Lewis and Lisa London, pursuant to Count V hereof, for

unjust enrichment, ordering that the Trustee is entitled to half of the net value of

the assets held by Nannette Lewis and Lisa London as Trustee of the Cone Hill

Trust, and ordering that the Defendants to turnover half of the net assets to the

Estate, along with, interest, attorneys fees, and costs to the Trustee.

6.       Enter joint and several judgment in favor of the Trustee, against the

Defendants, Nannette Lewis and Lisa London, pursuant to Count VI hereof, that

pursuant to Mass. Gen. Laws. Ch. 214 § 3(8), the Trustee is entitled to reach the

Assets formerly held by the Debtor that are now owned, controlled or in the possession of the Defendants Nannette Lewis and/or Lisa London and apply the Assets for the Estate.

7.     Enter joint and several judgment in favor of the Trustee, against the Defendants, Nannette Lewis and Lisa London, pursuant to Count VII hereof for the establishment of a constructive or resulting trust, ordering that the Defendants hold the roughly $900,000 in proceeds from the sale of the 423 Cone Hill Property as a resulting trustee/constructive trustee for the benefit of the Trustee and the Estate, and for an order requiring the Defendants to turnover such property to the Estate.

8.     For attachment or injunction against the transferee Defendants' property  in accordance with M.G.L. c. 109A(8), if the Trustee makes a separate motion for such attachment or injunction; and

9.     To grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

ALAN L. BRAUNSTEIN, CHAPTER 7
TRUSTEE IN BANKRUPTCY FOR LESLIE
B. LEWIS,

By his Attorney,

Dated: April 14, 2015              /s/ Ilyas J. Rona
                                   _____
                                   Ilyas J. Rona, Esq. (BBO# 642964)
                                   **MILLIGAN RONA DURAN & KING LLC**
                                   Seven Liberty Square, 2nd Floor
                                   Boston, Massachusetts 02109
                                   Tel: (617) 395-9570
                                   Fax: (855) 395-5525
                                   ijr@milliganrona.com